**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Sileymane D.,<br><br>Petitioner,<br><br>v.<br><br>Warden, Kandiyohi County Jail; Field Office Director, ICE, St. Paul Field Office; David Venturella, Senior Official Performing Duties of Director of United States Immigration and Customs Enforcement; Markwayne Mullin, Secretary of Homeland Security; and Todd Blanche, United States Acting Attorney General,<br><br>Respondents. | Case No. 26-CV-2794 (NEB/DJF)<br><br><br><br>**REPORT AND RECOMMENDATION** |

Petitioner Sileymane D. is currently being detained pursuant to 8 U.S.C. § 1225(b)(2) pending the outcome of the ongoing removal proceedings against him.[1] Section 1225(b)(2) does not provide a mechanism through which a detainee may challenge the appropriateness of his ongoing detention during the pendency of removal proceedings. Under the statute, any detainee held pursuant to Section 1225(b)(2) must remain in custody until the removal proceedings have concluded, regardless of whether the detainee is a flight risk or a risk to others, and regardless of the length of his detention.

[1] Petitioner represents in his habeas petition ("Petition") that he is detained pursuant to 8 U.S.C. § 1231 because an order of removal has been entered against him by an immigration judge. (*See* ECF No. 1 at 6.) But as both Petitioner and the government acknowledge, that removal order is still pending on appeal before the Board of Immigration Appeals. An immigration detainee does not become subject to mandatory detention under Section 1231 until the order of removal becomes administratively final, *see* 8 U.S.C. § 1231(a)(1)(B)(i). Because Petitioner's appeal remains ongoing, his order of removal has not yet become administratively final. Accordingly, Petitioner is not yet subject to Section 1231.

Petitioner entered the United States on May 16, 2023 to seek protection from persecution in his country of origin, Mauritania. (ECF No. 1 at 4.) An immigration judge ordered him removed on July 31, 2025, and his appeal from that order to the Board of Immigration Appeals ("BIA") remains pending. (*Id*. at 5.) He traveled to Canada after the immigration judge entered the order of removal, and U.S. immigration officials apprehended him at the border when he attempted to return to the United States on November 9, 2025. (*Id*.) He has now been in custody for close to nine months without a bond hearing. (*Id*. at 5-6.)

The question at issue in this habeas corpus proceeding, as in many other habeas corpus proceedings that have been initiated in this District in recent months, is whether the United States Constitution requires that detainees in Petitioner's position be afforded a bond hearing, regardless of whether Section 1225(b)(2) provides for such a hearing. The Court concludes that it does.

*Mathews v. Eldridge* provides the framework for evaluating Petitioner's procedural due process claim. 424 U.S. 319 (1976). The Supreme Court in *Mathews* held that

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The first of these factors weighs heavily in favor of Petitioner. A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The private interest that Petitioner seeks to advance in this interest is not only a liberty interest; it is "the most elemental of liberty interests—the interest in being free from physical

detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action")). Petitioner's ongoing physical detention is, as a practical matter, little different than criminal detention. He is detained alongside pretrial criminal detainees and convicted prisoners serving sentences at a county jail. The private interest at issue could hardly be more important.

The second factor—risk of erroneous deprivation—weighs in favor of Petitioner as well. The government argues Petitioner has already received adequate process because he "is in full immigration proceedings [and has been] represented by counsel in those proceedings." (ECF No. 8 at 11.) But the question before the Court is not whether Petitioner's *removal* proceedings are being carried out in a manner consistent with due process, but whether Petitioner's *detention* during the lengthy pendency of those removal proceedings is lawful absent procedural protections. The government has provided no procedural mechanism answering that question.

The government further argues a bond hearing would accomplish nothing meaningful, because it is already clear that Petitioner is subject to detention under Section 1225(b)(2), and Section 1225(b)(2) does not provide for a bond hearing. But whether Petitioner is subject to that statute is irrelevant to whether he has a *constitutional* entitlement to a hearing to determine whether he should be detained during the pendency of his removal proceedings. As things stand, Petitioner and other detainees in Petitioner's position have no vehicle through which they may challenge the lawfulness of their detention on the grounds that, for example, they pose no risk of danger or flight.[2]

[2] It is entirely possible that Petitioner could be a flight risk. But the Court does not reach a finding as to whether Petitioner is entitled to release on bond. The question here is whether the Constitution demands a vehicle through which to separate the wheat from the chaff, sorting the compelling claims to conditional release from the not-compelling claims.

The final factor under *Mathews*, the government's interest, does not outweigh the countervailing interests described above. The requirement of a bond hearing "would impose minimal, if any, financial or administrative burden[.]" *Abdirashid H.M. v. Noem*, No. 25-cv-4779 (JRT/EMB), 2026 WL 127698, at *5 (D. Minn. Jan. 9, 2026). As the government itself has pointed out, detainees in Petitioner's position are already entitled to process, including hearings, during the course of their removal proceedings. The requirement of a bond determination would require no more than that another question be addressed at one of those hearings. In any event, until very recently, detainees in Petitioner's position would have been afforded a bond hearing. *See Jesus Alejandro G. A. v. Blanche*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *12 (D. Minn. May 18, 2026). There is no reason to believe the burden imposed on the government to provide bond hearings has grown in the meantime.

Finally, the Court observes that numerous judges in this District (including the presiding judge in this case) have held due process requires bond hearings for individuals detained under Section 1225(b)(2)(A) after their arrival in the United States. *See Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656 (D. Minn. July 2, 2026); *Manuel G. v. Blanche*, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358 (D. Minn. May 7, 2026); *Berman J.P.H. v. Margolin*, No. 26-cv-2131 (JRT/EMB), 2026 WL 1245758 (D. Minn. May 6, 2026); *Axel J.M.C. v. Stanski*, No. 26-cv-2281 (JRT/EMB), 2026 WL 1171344 (D. Minn. Apr. 29, 2026); *Orlando R.V.V. v. Blanche*, No. 26-cv-1903 (MJD/SGE), ECF No. 11 (D. Minn. Apr. 28, 2026); *David J.C.P. v. Blanche*, No. 26-cv-2181 (DWF/ECW), 2026 WL 1102725 (D. Minn. Apr. 23, 2026); *Osman J.M.A. v. Blanche*, No. 26-cv-2123 (DWF/DJF), 2026 WL 1005056 (D. Minn. Apr. 14, 2026); *Alicia N.F.C. v. Blanche*, No. 26-cv-2145 (DWF/JFD), 2026 WL 1005079 (D. Minn. Apr. 14, 2026); *Aureliano M.S. v. Bondi*, No. 26-cv-1974 (JRT/DWF), 2026 WL 992445 (D. Minn. Apr.

13, 2026); *Pedro A.D.L.O.O. v. Bondi*, No. 26-cv-1959 (DWF/DJF), 2026 WL 948970 (D. Minn. Apr. 8, 2026); *Mahamud v. Bondi*, No. 26-cv-1418 (NEB/DTS), ECF No. 10 (D. Minn. Feb. 10, 2026). *But see Brayam G.G. v. Bondi*, No. 26-cv-1985 (DMT/EMB), ECF No. 22 (Apr. 15, 2026). Consistent with the majority position on this issue, this Court finds that Petitioner's continued detention without a bond hearing violates his right to procedural due process under the Fifth Amendment.

Petitioner requests immediate release from detention as a remedy or, barring that, a bond hearing. The more appropriate remedy for Petitioner's due process claim is a bond hearing. Petitioner has been deprived of a procedure to establish whether he should be released, and the appropriate cure is to require that Petitioner receive that procedure.[3] Accordingly, the Court recommends relief in the form of a bond hearing, to be conducted within 48 hours if this Report and Recommendation is adopted and the Petition is granted.

Finally, because the Court finds Petitioner's continued detention without a bond hearing violates his right to due process, expediting these proceedings is warranted. Therefore, the Court is altering the standard timelines for Respondents to file objections to the Court's recommendation that the Petition be granted. *See* D. Minn. L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a Magistrate Judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, unless the court sets a different deadline."). Respondents must file any objection to the Court's recommendation on or before August 10, 2026. Petitioner may file a response to any objections on or before August 17, 2026.

[3] In addition to Petitioner's due process claim, the habeas petition also raises allegations of deliberate indifference to medical needs (though a deliberate indifference claim is not among the claims for relief formally raised). (*See* ECF No. 1 at 7-9.) Questions concerning the conditions of a detainee's confinement, however, are not cognizable in habeas corpus proceedings. *See Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014).

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Sileymane D.'s petition for a writ of habeas (ECF No. 1) be **GRANTED IN PART** and **DENIED IN PART**.

   a. The Petition be **GRANTED** with respect to Petitioner's procedural due process claim, insofar as Petitioner requests a bond hearing as a remedy.

   b. The Petition be **DENIED** in all other respects.

2. Respondents be ordered to provide Petitioner with a bond hearing within 48 hours after an order is filed granting the Petition.

3. Petitioner's motion for a temporary restraining order (ECF No. 4) be **DENIED AS MOOT** in light of the recommendation that the Petition be granted.

Dated: August 3, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **August 10, 2026**. Petitioner may file a response to any objections on or before **August 17, 2026**.